UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| CASSANDRA E. JOHNSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:24-CV-00071 JAR |
| | ) |
| ANGELA MESMER, et al., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

This matter is before the Court on the motion of self-represented plaintiff Cassandra E. Johnston, an inmate at the Women's Eastern Reception and Diagnostic Correctional Center (WERDCC) in Vandalia, Missouri, for leave to commence this civil action without prepayment of the required filing fee. [ECF No. 2]. Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $80.06. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will order plaintiff to file an amended complaint on a Court-form. Plaintiff's failure to do so in a timely manner will result in a dismissal of this action, without prejudice.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month

period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the motion for leave to proceed in forma pauperis, plaintiff submitted a copy of her certified inmate account statement. [ECF No. 4]. A review of plaintiff's account indicates an average monthly deposit of $101.73 and an average monthly balance of $400.32. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $80.06, which is 20 percent of plaintiff's average monthly balance.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded

facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff Cassandra Johnston, an inmate at (WERDCC), filed the instant action pursuant to 42 U.S.C. § 1983. [ECF No. 1]. Plaintiff names seventeen (17) individuals as defendants in this action: (1) Angela Mesmer (Warden, WERDCC); (2) Todd Francis (Deputy Warden, WERDCC); (3) Derrek Hendern (Deputy Warden, WERDCC); (4) Lance McAfee (Functional Unit Manager (FUM)); (5) Christopher Buie (FUM); (6) Kieth Kieffer (FUM); (7) Jane Barton (Classification Staff); (8) Christy Yok (Classification Staff); (9) Destiny Swank-Pease (Classification Staff); (10) Kimberly Immel (Classification Staff); (11) Donna Brown (Classification Staff); (12) Jane Nelson (Classification Staff); (13) Crystal Hull (Cosmetology Instructor); (14) Jonathan Lewis (Correctional Officer); (15) Nicole Wiede (Correctional Officer); (16) John Baumbach (Correctional Officer); and (17) Aiden Leon (Correctional Officer). Defendant Angela Mesmer,

the Warden at WERDCC, is sued in both her individual and official capacities. However, the remaining defendants are sued in their individual capacities only.

Plaintiff's allegations are difficult to follow, as they span from early 2023 through the end of 2024 and contain a multitude of claims for relief against almost two dozen defendants. It appears that she is alleging claims of harassment, retaliation, discrimination and infringement of her due process rights. Plaintiff also alleges that defendants have "colluded" against her to infringe upon her rehabilitation efforts by giving her conduct violations and by unlawfully placing her in disciplinary segregation.

### A. Plaintiff's Claims of "Collusion," Harassment, Interference with School Program and Infringement on her Rehabilitation Efforts

Plaintiff states that she was accepted into Washington University's Bachelor's Degree Program at WERDCC on or about May 4, 2023. [ECF No. 1, p. 11]. She alleges, in a conclusory fashion, that defendant Lance McAfee, a Functional Unit Manager, moved her off an unnamed wing, on May 7, 2023, without any provocation, where she had been staying for over eight months. *Id.* at pp. 9, 11. Plaintiff believes McAfee's actions were done only to harass her and "collude" against her. She claims that McAfee told her, "You just don't quit! Reporting staff has gotten you nowhere. You didn't get Work Release, you didn't get into Vo-Tech, and if this institution had anything to do with it, you wouldn't've got Wash U neither." *Id.* at 9.

Plaintiff asserts that she was moved onto a wing where she had several enemies, but she fails to indicate who those enemies were, or if defendant McAfee was aware of her alleged enemies on the wing. Her fear, apparently, was that she could be assaulted or have drugs or weapons planted on her. [ECF No. 1, p. 11]. Plaintiff states that McAfee told her, "This is prison. . .it's not my duty to make sure you are comfortable." On May 10, 2023, plaintiff was sent to segregation for a Prison Rape Elimination Act (PREA) investigation. Plaintiff, however, was released from segregation

after the investigation was complete on May 16, 2023. *Id*. Plaintiff does not indicate who did the alleged PREA investigation.

Plaintiff, however, claims that McAfee "engaged in his own investigation" as to the alleged charges against her, which resulted in plaintiff being charged with a conduct violation. *See* WERDCC No. 23-00573. [ECF No. 1, p. 12].[1] The alleged conduct violation stated that plaintiff was found masturbating during a personal phone call. Plaintiff, however, states that the report done by McAfee was false. *Id*. She claims that she had a hearing on the violation in front of defendant Donna Brown, Classification Staff, on May 31, 2023. *Id.* at p.20. When plaintiff asked to have the person she was on the phone with brought in as a witness at the hearing, Brown allegedly replied, "McAfee said I don't have to get your friend's statement. . ." Brown then found plaintiff guilty of the conduct violation. *Id.* Plaintiff does not indicate what punishment she received because of being found guilty of the conduct violation; however, it appears that she was moved to disciplinary segregation for a brief period, or for approximately a month's time.

Plaintiff alleges in a conclusory manner that on or about June 20, 2023, one day after she was released from disciplinary segregation, defendant McAfee moved an inmate named Courtney Rose into a cell with plaintiff so that Rose could purportedly "take the plaintiff out." [ECF No. 1, p. 12]. Plaintiff, however, does not indicate that Rose was on her enemy's list. Rose allegedly told plaintiff on June 22, 2023, "McAfee told me to watch you because you like to masturbate." He said to take you out if I have any problems with you. . .he wants you in the hole girl." *Id.* Plaintiff complains that Rose made a false PREA report about plaintiff the next day, and she was sent back to "the hole," which appears to refer to disciplinary segregation. Plaintiff complains that when she was released from disciplinary segregation on July 10, 2023, approximately three days later,

---

[1] Although plaintiff has included several Institutional Resolution Requests (IRRs) with her complaint, it does not appear that she has included one relative to this conduct violation.

5

McAfee moved her to a housing unit where she had "several enemies," which also contained inmate Rose. *Id.* Plaintiff believes McAfee did so with the sole purpose of harassing her. *Id.*

Plaintiff alleges that on or about July 13, 2023, defendant Jane Barton, Classification Staff, met with Dr. Meredith Killinger, a Professor with the Washington University Bachelor's Degree Program. [ECF No. 1, p. 9]. Barton allegedly asked Dr. Killinger when the program could remove a student. Dr. Killinger is not a named defendant in this action. Plaintiff claims in a conclusory manner, however, that defendant Barton knew that defendant Derrek Hendern (Deputy Warden), Lance McAfee (Functional Unit Manager), Christy York (Classification Staff), and Destin Swank-Pease (Classification Staff) wanted to have plaintiff removed from the Washington University Bachelor's Degree Program. *Id.* Plaintiff does not indicate why these alleged defendants purportedly wanted her removed from the Program. Similarly, plaintiff fails to provide evidence of any alleged "collusion," such as whether Barton was asked by the other defendants to seek out Dr. Killinger to have plaintiff removed from the Washington University Program.

Plaintiff next states in a conclusory fashion, that one of her friends, Loutinia Owens, spoke to defendant Swank-Pease on or about July 17, 2023, regarding why plaintiff kept being sent to disciplinary segregation. [ECF No. 1, p. 9]. Swank-Pease allegedly told Owens, "Johnston did not earn Wash U and she don't deserve it." *Id.* Plaintiff states that when she stopped to show her 3.91 G.P.A. to Deputy Warden Todd Francis on December 13, 2023, Deputy Warden Derrek Hendern allegedly told her, "There are other ways to get you out of school if you're too smart to flunk out." *Id.*

### B. Plaintiff's Claims of Sexual Harassment and Retaliation for Reporting Sexual Harassment

Plaintiff alleges that she suffered from sexual harassment at WERDCC by defendant Correctional Officer Aidan Leon that began in July of 2023 and went through March of 2024. She

6

claims the harassment started on July 18, 2023, when plaintiff was in the dayroom using the microwave and defendant Leon told her he had noticed her. [ECF No. 1, p. 13]. When plaintiff said she was attempting to go unnoticed, defendant Leon said, "With a walk like that it's hard to not notice you." *Id.*

By August of 2023, plaintiff claims that defendant Leon was calling her to the rotunda every morning. He started asking her questions such as how much time she had done, when she was getting released, where she was from and if she was married. *Id.* Plaintiff claims she asked defendant Leon if he was directing her to answer personal questions. *Id.* On September 1, 2023, when defendant Leon called plaintiff to the rotunda, plaintiff said, "How can I help you? Why do you keep calling me out to this rotunda?" *Id.* Plaintiff does not indicate what defendant Leon replied. However, she claims that defendant Leon started placing the laundry room sign up on his desk in the rotunda so that it was necessary for her to enter the rotunda to sign up there. *Id.*

On September 4, 2023, defendant Leon allegedly had Correctional Officer Sellers, who is not a named defendant in this case, bring plaintiff to the rotunda. Leon said, "Let's make a deal. . ." Plaintiff allegedly told Leon, "I do not make deals with C.O.s." [ECF No. 1, pp. 13-14]. Plaintiff states that at this point, she began reporting defendant Leon's conduct to his supervisor. *Id.* at 14. The Court assumes defendant Leon's supervisor was Christy York, Classification Staff, based on plaintiff's allegations in her complaint.

Plaintiff states that in "September 2023," she reported to defendant Christy York that defendant Leon was harassing her, and that she thought the harassment was sexual in nature. Plaintiff claims that York blamed her for the alleged harassment, stating, "if he is harassing you, that's on you. . ." Plaintiff claims that York told her that reporting the issue was making her prison

7

time harder. *Id*. Plaintiff does not indicate if she filed a PREA report regarding defendant Leon's conduct.

On an unnamed date in October of 2023, plaintiff claims she and another inmate, Patricia Moore, went to breakfast together, and when defendant Leon saw plaintiff get her meal tray, she heard Leon say, "Your black ass got me hard. . ." *Id*. Allegedly inmate Moore wrote an offender statement regarding the incident. Around this same time, plaintiff claims she was assisting defendant Destiny Swank-Pease, Classification Staff, with a supply run, and she asked her how to deal with the harassment from defendant Leon. [ECF No. 1, pp. 14-15]. Swank-Pease alleged said, "You ain't no better than these other whores around here." *Id.* at 15.

Plaintiff states that on or about November 3, 2023, she was alone in the restroom at approximately 3:00 a.m., when she heard a male voice call out, "Showers clear!" Plaintiff states that she called out three separate times, "Johnston's in the bathroom!" She then allegedly heard defendant Leon whisper, "I know you're in here. . ." *Id*. Plaintiff believed Leon to be in the bathroom with her, and she pushed herself against the stall door. *Id*.

On November 19, 2023, plaintiff claims that defendant Leon was conducting a security walk when he saw plaintiff alone in the restroom. Plaintiff claims that Leon said, "Black girls are easy. Nobody believe them, they are seen as the aggressors, and they don't get sympathy." *Id*.

Plaintiff claims that she made several reports to unnamed persons in "mental health" that she was being stalked and harassed by defendant Leon. [ECF No. 1, p. 16]. She states that she not only stated she feared for her safety but that she also believed "certain staff" were working together to obstruct her rehabilitation efforts. *Id*.

In August of 2023, plaintiff purportedly spoke with defendants Derrek Hendern, Deputy Warden, and Jonathan Lewis, Correctional Officer, in the Captain's Office about her fears that

8

Functional Unit Manager Lance McAfee was using inmates at WERDCC to "set her up on bogus investigations." *Id.* She claims that Hendern and Lewis started calling her a lesbian and accused her of being sexually involved with another inmate. Hendern allegedly stated, "We are considering re-classifying you as a sexual deviant. . ." He purportedly advised plaintiff to transfer. *Id.* Plaintiff states that she told Hendern and Lewis that she wanted to remain at WERDCC to obtain her Bachelor's Degree prior to release. *Id.* Plaintiff purportedly asked Hendern to "Please call off your dogs. . ." *Id.*

Plaintiff claims that on or about December 13, 2023, she stopped at the Barber Shop at WERDCC to report to Deputy Wardens Derrek Hendern and Todd Francis, as well as Correctional Officers Jonathan Lewis and John Baumbach, that defendant Leon's harassment was progressing. She claims she also showed defendant Francis her GPA at this time. [ECF No. 1, p. 17]. Defendant Hendern allegedly told plaintiff, "There's other ways to get you out of school if you're too smart to flunk out. . ." *Id.* After this plaintiff allegedly spoke with PREA advocate Amy Harold several times regarding the "grief, fear and retaliation" she was experiencing" regarding staff member misconduct. *Id.*

Plaintiff alleges that she has been subjected to several harassing comments by various individuals at WERDCC. On February 16, 2024, plaintiff was allegedly told by Taylor Immel, who is not a named defendant in this case, she was going home in fifteen months. He purportedly replied, "No you won't. We are going to make sure you don't." *Id.* On March 9, 2024, defendant Leon told plaintiff, "You better hope you make it to Chili[cothe], cause you ain't safe here." *Id.*

On March 13, 2024, plaintiff asserts that defendant Kieth Kieffer, a Functional Unit Manager at WERDCC, threatened her when she sought protective custody by saying, "If you PC, I will make you very uncomfortable. . ." *Id.* On March 19, 2024, plaintiff allegedly overheard

9

Functional Unit Manager Lance McAfee say to Correctional Officer Saunders, ". . .give her a violation for everything. She has remained under possible enemy status." [ECF No. 1, p. 18]. Plaintiff claims that this refers to punitive segregation according to Warden Angela Mesmer. *Id.* Although plaintiff believes that the "possible enemy status" designation was given to her by Angela Mesmer, she does not indicate why she believes this.

Plaintiff states that all conduct violations given to her after September 4, 2023, were done in retaliation for reporting Correctional Officer Leon's harassment to Classification Staff Member Christy York. [ECF No. 1, p. 19]. She claims that there is evidence of this because on September 13, 2023, Leon stopped her on the way to breakfast and told her, "Since you like to report sexual harassment, I'm going to start writing your black ass up." *Id.* After this time, she was "forbidden from engaging in permissible activities" and violation reports were made against her. *Id.* She was forbidden, for example, from getting ice, on September 13, 2023. *Id.* When she asked defendant Leon why this was forbidden, he stated, "I bet you wanna make a deal now," and at that time he wrote her a conduct violation. *See* WERDCC No. 23-01108. *Id.*

Plaintiff claims that Leon also began formally and informally sanctioning her because her signature on the laundry form was either too big or too small. *Id.* And as the rotunda officer, Leon instructed other wing officers to forbid plaintiff from heating up water or opening the laundry room during her laundry time. *Id.* According to plaintiff, Leon would tell other inmates that the failure to open the laundry room was Johnston's fault. *Id.*

On February 7, 2024, defendant Crystal Hull told plaintiff that her bosses, the wardens, wanted her to write plaintiff up. Hull apparently wrote WERDCC No. 24-00178 on plaintiff, which plaintiff refers to as "misleading." *Id.* Plaintiff asserts that because of a modified sanction on this

conduct violation written by Classification Staff Member Destiny Swank-Pease on February 20, 2024, plaintiff's sanctions included removal from school. *Id.*

### C. Plaintiff's Claims for Infringement of her Due Process Rights

As noted above, plaintiff alleges that her due process rights were first violated when she was charged with a conduct violation in May of 2023, WERDCC No. 23-00573, for masturbating on a personal phone call, but she was not allowed to call the individual who she had been on the phone with as a witness in her hearing in front of defendant Donna Brown, Classification Staff, on May 31, 2023. Plaintiff blames both defendant Brown and Functional Unit Manager Lance McAfee for denial of her due process rights, and she claims that the disciplinary hearing was held outside the Missouri Department of Corrections (MDOC) guidelines. [ECF No. 1, pp. 12, 20]. Plaintiff appears to have been kept in disciplinary segregation for approximately a month, and she indicates that she lost "property and other privileges." *Id.* at 20. She has not indicated in detail what privileges she allegedly lost after she was found guilty of the conduct violation, however.

Plaintiff states that on August 4, 2023, she was found guilty of conduct violation WERDCC No. 23-00856 by defendant Destiny Swank-Pease, Classification Staff. *Id.* at 20. On that date, defendant allegedly told plaintiff, "Everytime [sic] I team you on a violation, your [sic] going to be guilty. . ." *Id.* On September 22, 2023, during the disciplinary hearing for WERDCC No. 23-01108, plaintiff claims that defendant Kimberly Immel, Classification Staff, failed to document evidence that she relied on to find plaintiff guilty. [ECF No. 1, pp. 20-21.]. When plaintiff challenged the finding of guilt, defendant Immel allegedly replied she was doing what she was told to do by defendant Lance McAfee, the Functional Unit Manager. *Id.* at 21.

On November 29, 2023, while waiting for a disciplinary hearing to start on WERDCC No. 23-01305, Correctional Officer Bowness, who is not a named defendant in this lawsuit, stated,

11

"They called me to take you to five house [disciplinary segregation]." [ECF No. 1, p. 21]. Plaintiff claims that the two were half-way to five house before Bowness was told by an unnamed person to return plaintiff so defendant Christy York, Classification Staff, could conduct the disciplinary hearing. Plaintiff claims that York refused to obtain a statement from Correctional Officer Cagle before finding plaintiff guilty of the conduct violation and sentencing her to disciplinary segregation. *Id*; *see also* WERDCC No. 23-286.

On December 18, 2023, Correctional Officer Chapman reported that plaintiff had been assaulted and did not fight back. *See* WERDCC No. 23-01423. Plaintiff claims that the inmate who assaulted her, admitted she was guilty of starting the fight and was actually found guilty of the violation. [ECF No. 1, p. 21]. Plaintiff complains that despite this, defendant Jane Nelson, Classification Staff, modified the violation to a more severe "creating a disturbance," and found her guilty of the violation, utilizing a video which purportedly showed plaintiff arguing with the other offender. *Id.* at 22; *see also* WERDCC No. 24-75.

Plaintiff complains that her statement of defense was not reviewed prior to her disciplinary hearing on February 16, 2024, regarding conduct violation WERDCC No. 24-00178. *Id.* She states that when she asked defendant Destiny Swank-Pease, Classification Staff, to review the statement she prepared and to have the cameras reviewed, Swank-Pease told her, "I'm not tabling this hearing to get evidence that ain't gone matter no way! Now do you have a statement and it needs to fit on this one line." *Id.* Plaintiff states that on February 20, 2024, defendant Derrek Hendern modified her disciplinary sanction to include her removal from the Washington University Bachelor's Degree Program. *Id.* at 23.[2] Plaintiff believes the disciplinary sanction was outside the Missouri

---

[2]Plaintiff has included copies of her grievance documents as attachments to her complaint. On March 29, 2024, in response to plaintiff's IRR grieving her removal from the Washington University Program, investigation staff at WERDCC responded to plaintiff that she had lost privileges in the program for acquiring 11 conduct violations in a shortened time, a total of 106 violations during her incarceration and

Department of Corrections' policy. Plaintiff allegedly filed an IRR regarding her removal from the Program, but she claims her evidence was not responded to. *Id.*

On April 29, 2024, plaintiff received conduct violation WERDCC No. 24-00514, which was supposed to be for a minor rule violation. [ECF No. 1, p. 23]. She claims that she asked the alleged victim for a witness statement. However, at the hearing held on May 2, 2024, plaintiff was charged with a major rule violation by Functional Unit Manager Christopher Buie and Correctional Officer Zimmer, who is not a named defendant in this action. *Id.* Plaintiff claims that she was then read her *Miranda* rights, but she declined to waive her right to counsel. *Id.*

### D. Plaintiff's Claims for Discrimination

Plaintiff claims that she was treated differently than others who were in disciplinary segregation who were also enrolled in the Washington University Bachelor's Degree Program. Specifically, plaintiff states that defendants Derrek Hendern (Deputy Warden), Lance McAfee (Functional Unit Manager), Crystal Hull (Cosmetology Instructor), Destiny Swank-Pease (Classification Staff), Kieth Kieffer (Functional Unit Manager) and Nicole Wiede (Correctional Officer), intentionally and without a rational basis, treated her in a more discriminatory manner than others who were similarly situated than her. [ECF No. 1, p. 24].

Plaintiff claims that there was a list of approved school materials that were allowed for inmates who were housed in disciplinary segregation, and that while she was housed there, she requested those materials from Classification Staff, Alexis Marks, but Marks told plaintiff that defendant Kieffer would not allow Marks to give plaintiff those supplies. However, all other

---

for accumulating a 19.1 violation. On May 3, 2024, Deputy Warden Hendren indicated that plaintiff was removed from the Washington University Program as a direct result of having 23 violations over a one-year span.

persons who were enrolled in the Washington University Bachelor's Degree Program were allowed the supplies except plaintiff. *Id.* Marks is not named as a defendant in this action.

Plaintiff, however, does not indicate how or why she links defendants Derrek Hendern, Lance McAfee, Crystal Hull, Destiny Swank-Pease and Nicole Wiede to defendant Kieffer's alleged unlawful actions. Instead, plaintiff makes conclusory allegations against the remaining defendants regarding their alleged discriminatory conduct.

Plaintiff alleges, however, that defendant Destiny Swank-Pease made a racist statement during a disciplinary hearing on August 4, 2023, that "[a]ll you nappy heads are guilty." *Id.* at 24. As noted above, plaintiff also takes issue with being assessed a violation for "creating a disturbance" after she was assaulted in December of 2024. *See* WERDCC No. 23-01423. *Id.* at 24. Plaintiff believes that others would have simply had the violation removed from their record, while she was given a conduct violation, which later resulted in her removal from the Washington University Program. *Id.*

Plaintiff also believes she was treated differently than another individual who was also waiting to get into the cosmetology program named Kim Collins. Plaintiff claims that she waited over five months to get into the program, while Collins waited a mere three weeks. [ECF No. 1, p. 26.] Plaintiff states that she had an education score of a 2, her GED had been verified, and she had fewer than five violations within the year.[3] Plaintiff states that Collins had not seen the parole board and had no scheduled release date. She claims Collins' education had not been verified but was otherwise similarly situated. Plaintiff states that Collins declined entrance into the program once it was offered to her. *Id.*

---

[3]Plaintiff's assertions regarding the number of conduct violations on her record is in contravention to the information from the MDOC.

14

E.  **Request for Relief**

Plaintiff seeks damages and injunctive relief in this matter.

**Discussion**

Having thoroughly reviewed and liberally construed plaintiff's complaint, the Court concludes it is subject to dismissal as written.

First, plaintiff has attempted to assert multiple unrelated claims in this lawsuit against seventeen (17) defendants, which is impermissible. Although plaintiff may join in one action as many claims as she has against a *single* defendant, *see* Fed. R. Civ. P. 18(a) (emphasis added), when *multiple defendants* are named, the Court must consider whether the defendants are properly joined under Rule 20(a)(2) of the Federal Rules of Civil Procedure. *See Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 57 (7th Cir. 1982).

Under Rule 20(a)(2), a plaintiff may join *multiple defendants* in one action only if her claims against them arise out of the same transaction or occurrence or if a series of transactions or occurrences present common questions of law or fact. *Unrelated claims against different defendants must be brought in different suits.* (emphasis added). Plaintiff should therefore decide what claims to pursue in this lawsuit and what claims she wishes to pursue in any separate lawsuit(s) in the future. The Court will provide plaintiff with two complaint forms. She may seek additional complaint forms from this Court by contacting the Court Clerk.

Second, plaintiff's pleading, which numbers forty-two (42) pages in length, is overbroad, is not fully contained on a Court-provided form as a required by the Court's Local Rule 2.01(B)(1) and contains a plethora of conclusory allegations. Although civil rights pleadings should be construed liberally, at the very least, however, the complaint must contain facts which state a claim as a matter of law and must not be conclusory. *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th

15

Cir. 1995). Like the complaint in *Ashcroft v. Iqbal*, which alleged that supervisory officials knew of, condoned, and willfully and maliciously agreed to subject the plaintiff to harsh conditions for an illegitimate reason, plaintiff's conclusory allegations against the individual defendants in the instant complaint are conclusory, and they are not entitled to a presumption of truth. 556 U.S. at 678-79. The instant complaint asserts a plethora of conclusory allegations against the named defendants in this action that fail to reach a level of plausibility needed to state a claim under *Iqbal*. Plaintiff's complaint does not suffice to properly allege that the actions were known to the particular supervisory officials named as defendants, *see Wilson v. City of N. Little Rock*, 801 F.2d 316, 323 (8th Cir. 1986), and it assuredly does not plead adequately that the supervisors acted with the impermissible purpose as required by *Iqbal*. *See Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir. 1995) (A general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability.).

Last, plaintiff has made allegations against several of the defendants stating that they acted with an impermissible purpose but has failed to spell out exactly how her rights have been violated. *C.f. Iqbal*, 556 U.S. at 678-79. In short, plaintiff has failed to make direct allegations against many of the named defendants in this action. Liability under 42 U.S.C. § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

In the instant action, plaintiff has not set forth facts indicating that many of the named defendants were directly involved in or personally responsible for the alleged violations of her

constitutional rights. As a result, the complaint fails to state a claim upon which relief can be granted with respect to claims against many of the named defendants.

Nonetheless, in consideration of plaintiff's self-represented status, the Court will allow her to submit an amended complaint on a Court-provided form. *See* E.D. Local Rule 2.01(B)(1). Plaintiff's failure to comply with this Court's instructions relating to the filing of her amended complaint may result in a dismissal of this action, without prejudice.

Plaintiff is warned that the filing of an amended complaint replaces the original complaint and all previously-filed pleadings, so plaintiff must include each and every one of the claims she wishes to pursue in the amended complaint. *See, e.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005). Any claims from the original complaint, supplements, and/or pleadings that are not included in the amended complaint will be deemed abandoned and will not be considered. *Id*. The allegations in the complaint may not be conclusory. Instead, plaintiff must plead facts that show how each defendant she names is personally involved in or directly responsible for the alleged harm. If plaintiff wishes to sue a defendant in his or her individual capacity, plaintiff must specifically say so in the amended complaint. If plaintiff fails to sue a defendant in his or her individual capacity, this action may be subject to dismissal as to that defendant.

Last, the Court will deny plaintiff's motion to compel discovery, without prejudice. *See* ECF No. 5. Because plaintiff, a prisoner, is proceeding as a pauper in this matter, the Prison Litigation Reform Act (PLRA) applies. *See* 42 U.S.C. § 1997e. Therefore, discovery will not commence in this action until after this Court's review of plaintiff's amended complaint pursuant to 28 U.S.C. § 1915 for frivolousness, maliciousness and for failure to state a claim. If plaintiff's amended complaint survives preservice review, the Court will order service on the amended

complaint and defendants will have the opportunity to answer plaintiff's pleading. Only after the filing of defendants' answer(s) will the Court issue a Case Management Order in this matter governing discovery.

### Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. [ECF No. 3]. In civil cases, a self-represented litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has yet to file a complaint that survives initial review, so it cannot be said that she has presented non-frivolous claims. Additionally, this case appears to involve straightforward factual and legal issues, and there is no indication that plaintiff cannot investigate the facts and present her claims to the Court. The Court will entertain future motions for appointment of counsel as the case progresses, if appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis [ECF No. 2] is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $80.06 within thirty (30) days of the date of this Order. Plaintiff is instructed to make her remittance payable to "Clerk, United States District Court," and to include upon it: (1) her name; (2) her prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff two blank Prisoner Civil Rights Complaint forms. Plaintiff may request additional forms as needed.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint on the Court-provided form in accordance with the instructions stated above within **thirty (30) days** of the date of this Order. Plaintiff is advised that her amended complaint will take the place of her original filing and will be the only pleading that this Court will review.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED** at this time.

**IT IS FURTHER ORDERED** that plaintiff's motion to compel discovery [ECF No. 5] is **DENIED**, without prejudice, as discovery in this matter is premature.

**IT IS FINALLY ORDERED** that if plaintiff fails to comply with this Order, the Court will dismiss this action without prejudice and without further notice.

Dated this 6th day of December, 2024.

_/s/ John A. Ross_
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE