UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| CASSANDRA E. JOHNSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-CV-00071 JAR |
| | ) | |
| ANGELA MESMER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court is plaintiff Cassandra Johnston's amended complaint. Johnston, an inmate at Chillicothe Correctional Center (CCC) in Chillicothe, Missouri, was granted leave to proceed without prepayment of the filing fee on December 6, 2024, and assessed an initial partial filing fee at that time. [ECF No. 6]. Due to the length and breadth of her original complaint, plaintiff was also ordered to amend her pleading on a Court-provided form and in compliance with this Court's Local Rules and the Federal Rules of Civil Procedure. *See id.* Plaintiff submitted her amended complaint, *see* ECF No. 11, on February 24, 2025. After reviewing the amended complaint, the Court will dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B).

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Amended Complaint

Plaintiff Cassandra Johnston, an inmate at CCC, filed the instant action pursuant to 42 U.S.C. § 1983 asserting claims relating to her incarceration at the Women's Eastern Reception Diagnostic and Correctional Center (WERDCC) in Vandalia, Missouri. [ECF No. 1]. She named seventeen (17) individuals as defendants in her original complaint. *See id.* Plaintiff's amended complaint names twelve (12) individuals as defendants: (1) the Missouri Department of Corrections (MDOC); (2) Trevor Foley (Division Director of Adult Institutions); (3) Derrek

2

Hendern (Deputy Warden); (4) Christopher Buie (Functional Unit Manager); (5) Lance McAfee (Functional Unit Manager); (6) Tammy Church (Functional Unit Manager); (7) Donna Brown (Classification Staff); (8) Christy York (Classification Staff); (9) Unknown Nelson (Classification Staff); (10) Destiny Swank-Pease (Classification Staff); (11) Unknown Zimmer (Correctional Officer); and (12) Crystal Hull (Cosmetology Instructor). [ECF No. 11]. Plaintiff sues both the Missouri Department of Corrections and Trevor Foley in their official capacities only. She sues defendants Christopher Buie, Lance McAfee, Tammy Church, Crystal Hull and Derrek Hendern in both their individual and official capacities. Plaintiff sues Destiny Swank-Pease, Unknown Zimmer, Donna Brown, Christy York and Unknown Nelson in their individual capacities only. [ECF No. 11].

Plaintiff's allegations are somewhat difficult to follow, as they span a period between July of 2021 and the end of 2024. Her claims for relief are varied and against a dozen defendants. It appears that she is alleging claims of discrimination and infringement of her due process rights. Plaintiff also alleges that defendants have "colluded" against her to infringe upon her rehabilitation efforts by giving her conduct violations (CDVs) and by unlawfully placing her in Disciplinary Segregation. These appear to be the same claims that the Court previously informed plaintiff in its December 6, 2024 Memorandum and Order were improperly joined in violation of Federal Rules of Civil Procedure 18 and 20. [ECF No. 6].

## A. Misjoinder of Claims

Plaintiff's amended complaint is twenty-seven (27) pages, along with fifty-two (52) pages of exhibits. [ECF No. 11]. Her original complaint contained forty-two (42) pages of allegations with seventy-one (71) pages of exhibits. [ECF No. 1]. The Court took great care in its December 6, 2024 Memorandum and Order to piece through plaintiff's allegations and her accompanying

exhibits to construe plaintiff's claims in this lawsuit. In that Memorandum and Order, the Court

instructed plaintiff on proper joinder of claims under the Federal Rules of Civil Procedure. Plaintiff

was told that as written, her complaint was subject to dismissal because she had attempted to

include multiple unrelated claims in her lawsuit against multiple defendants. [ECF No. 6 at 15].

The Court noted that pursuant to Federal Rule of Civil Procedure 18(a), plaintiff could join as

many claims as she had against a *single* defendant. *See id* (emphasis added). However, when

*multiple defendants* are named in a lawsuit, the Court must consider whether the defendants are

properly joined under Rule 20(a)(2) of the Federal Rules of Civil Procedure. *See Intercon Research

Assocs., Ltd. v. Dresser Indus., Inc.,* 696 F.2d 53, 57 (7th Cir. 1982).

"Unrelated claims against different defendants belong in different suits, ... [in part] to

ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3

the number of frivolous suits or appeals that any prisoner may file without prepayment of the

required fees." *George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007). Complaints with unrelated

claims brought by prisoner plaintiffs against different defendants should be rejected, either by

severing the action into separate lawsuits or by dismissing improperly joined defendants. *Id.*; *see

also* Fed. R. Civ. P. 21; *DirecTV, Inc. v. Leto*, 467 F.3d 842, 844-45 (3rd Cir. 2006); *Elmore v.

Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000); *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848

F.2d 674, 682 (6th Cir. 1988).

As noted above, plaintiff attempts to bring several different claims in this lawsuit against

the twelve named defendants. She asserts:

- in July of 2021, defendant Lance McAfee improperly denied her application to the Work
  Release Program at WERDCC without cause;
- in September of 2021, defendant McAfee again denied her application to the Work Release
  Program without cause;
- on May 31, 2023, defendant Donna Brown denied her the ability to have a witness
  statement read during a disciplinary hearing for a conduct violation;

4

- on that same date, defendant Brown failed to adhere to MDOC department regulations;
- as a result of the finding of guilt on a CDV on May 31, 2023, plaintiff was remanded to Disciplinary Segregation, and she started her probationary semester at Washington University late, and the CDV was later used as justification to deny her entry into vocational training courses;
- on November 30, 2023, defendant Christy York conducted a CDV hearing without allowing plaintiff to get a witness statement from Sergeant Cagle, after which time York found plaintiff guilty and sanctioned her to Disciplinary Segregation and plaintiff was not allowed to attend university classes for two weeks;
- the CDV issued by defendant York was used to justify removing her from the Washington University Bachelor's Degree Program and for denying plaintiff entrance into vocational training courses;
- on January 4, 2024, defendant Unknown Nelson found plaintiff guilty of a CDV for creating a disturbance and sentenced plaintiff to ten days Disciplinary Segregation; plaintiff accuses defendant Nelson of failing to adhere to MDOC regulations and asserts that as a result of the sanctions assessed, she could not attend Washington University classes for two weeks and was later denied entrance into vocational training courses;
- after being given a CDV on February 7, 2024, for putting her hands in chemicals during a visit to cosmetology, plaintiff asserts that she wrote a three-page statement for use in her CDV hearing on February 14, 2024, but that defendant Destiny Swank-Pease refused to table the hearing to find the statement; plaintiff also asserts that defendant's Swank-Pease's actions were a violation of her due process rights;
- after being placed in Disciplinary Segregation on February 20, 2024, and removed from the ability to visit cosmetology, plaintiff asserts that defendant Derrek Hendern should not have modified the CDV to include her removal from the Washington University Bachelor's Degree Program for one year; plaintiff asserts that removal from Washington University Bachelor's Degree Program was a violation of her due process rights and interfered with a liberty interest, as well as treated her differently than others similarly situated;
- plaintiff purportedly filed a false Prison Rape Elimination Act (PREA) allegation in December of 2023 indicating that she had been sexually assaulted, which was investigated in April of 2024; she received a CDV for the false statement on May 2, 2024, from defendant Christopher Buie and Unknown Zimmer; plaintiff believes that her finding of guilt on the major rule violation was used to deny her entry into the vocational training course;
- plaintiff believes her due process rights were violated by defendant Tammy Church who refused to respond to an Institutional Resolution Request (IRR) filed on June 4, 2024, for a grievance she filed on July 19, 2024;
- plaintiff believes her due process rights were violated by defendant Tammy Church who failed to respond to an IRR filed on July 10, 2024, as well as a grievance she filed within the forty-day time period;[1] and

---

[1] In the amended complaint, plaintiff lists several IRRs and grievances that she believes were not responded to or were responded to late, but she fails to list the defendant/defendants who she believes are responsible for violations of her due process rights.

- plaintiff asserts in a conclusory manner that while she was in Disciplinary Segregation she was "unable to attend religious services, meals, participate in any sports, games or other competitions with her peers. . .unable to call family, friends or other supportive members"[2]

[ECF No. 11 at 8-20][3].

Federal Rule of Civil Procedure 21 permits severance of claims if they are improperly joined. The Federal Rule states, in pertinent part, that on motion or *sua sponte*, "the court may at any time, on just terms ... sever any claim against a party." Fed. R. Civ. P. 21. Severance is appropriate when the claims are "discrete and separate," each capable of resolution without dependence or effect on the other. *See Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (citations omitted).

When determining whether to sever claims pursuant to Rule 21, district courts often consider (1) whether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof; (2) whether severance would promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or its absence. *See Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D. Pa. 2000) (citation omitted).

The Court has reviewed plaintiff's amended complaint thoroughly, and it appears that plaintiff has two overriding claims in this case. She alleges that she was unlawfully removed from the Washington University Bachelor's Degree Program, and she was kept from entering the Vocational Cosmetology Program at WERDCC. She believes her rights were violated as set forth on pages seven through nine of her amended complaint, as stated below:

---

[2]Plaintiff has not indicated her religion or how long she was in Disciplinary Segregation during each of the occurrences she mentions in the amended complaint.

[3]The Court will refer to the "page labels" in the PDF documents uploaded in CM/ECF when citing to the Court record. These "page labels" may be different than the page numbering on a printed copy of the page.

While incarcerated at the Missouri Department of Correction, Defendants Lance McAfee, Crystal Hull, and Derrek Hendern, operated through their employer, WERDCC, to deprive the Plaintiff from participating in any meaningful Rehabilitative opportunities such as Vocational and Educational Programs in violation of the Equal Protection Clause under the Fourteenth Amendment to the United States Constitution.

On or about February 20, 2024, Defendant Hendern treated this Plaintiff differently from all others similarly situated intentionally and without rational bases by removing her from Washington University's Bachelor's Degree Program.

The Plaintiff was denied the property value of an education, employable skills and other meaningful rehabilitation, subjecting her to mere mental deterioration, placing her at a higher rate for mental recidivism, directly in contradiction to the State's objective to rehabilitate its prisoners.

Ordinarily inmates are removed from education Programs when their conduct threatens the safety of other inmates or staff members, or in possession of, or test positive for, substance use, and for any inmate to drop out of educational Programs will always result in a conduct violation with a restriction on any paid work, sanction.

On or about February 15, 2023, this Plaintiff met all qualification for the Vocation Training (Vo-Tech) Cosmetology Course and had been on the waiting list for entry into this course since September 2021, where at that time, she also met all qualifications for this course.

Defendant Crystal Hull treated the Plaintiff differently from others similarly situated intentionally and without rational bases by denying her entry into the Vo-Tech Cosmetology Course.

The Plaintiff was denied the Property Value of an education, employable skills, job references, and other meaningful rehabilitation trades, subjecting her to mere mental deterioration, placing her at a higher rate for recidivism, which directly contradicts the state's objective to reform its prisoners.

Ordinarily inmates who met the qualifications for Vo-Tech are accepted within 60 days from when they applied.

[ECF No. 11 at 7-9].

In consideration of the joinder rules, the Court will allow plaintiff to move forward with the aforementioned claims against the following defendants: the Missouri Department of Corrections, Lance McAfee, Crystal Hull and Derrek Hendern. Additionally, because the

7

"collusion," or conspiracy, claims relative to her purported removal from the Washington University Bachelor's Degree Program are so closely related to the above-stated claims, the Court will also address those claims. All other claims brought by plaintiff against the named defendants in this lawsuit are severed and dismissed, without prejudice, including her claims relating to "work release."

### B. Plaintiff's Claims of Delayed Entry into the Vocational Cosmetology Program

Plaintiff asserts that by February 15, 2023, she met all the qualifications for the Vocational Training Cosmetology Course,[4] and that she had been on the waiting list for the course since September of 2021. [ECF No. 11 at 8]. However, in her statement attached to the grievance appeal, WERDCC 24-68, filed on May 11, 2024, plaintiff states that due to her own behavior and accumulation of CDVs, as well as an ongoing PREA investigation, she had been in and out of Disciplinary/Administrative Segregation between November 2021 and September of 2023. [ECF No. 1 at 96-97].[5]

Plaintiff has not indicated in the amended complaint whether she was told why she was kept on the waiting list for an extended period. Plaintiff also contradicts herself when she discusses in her complaint and amended complaint the matter of who was responsible for making the decision to admit inmates into the Cosmetology Program. She intimates that the decisionmaker was defendant Crystal Hull, however, she has attached a letter to her amended complaint indicating

---

[4]Plaintiff often refers to the Cosmetology Program as Vo-Tech in her amended complaint.

[5]Plaintiff admits that in September of 2021, a 24.1 CDV for "Making, transferring, or having possession of any unauthorized article or substance" was dismissed and expunged from her record. [ECF No. 1 at 96]. This appears to have been a major CDV which would have kept her from being accepted into the Vocational Training Program at the time it was pending. Similarly, she admits that at the end of 2021, she "began receiving violations," and into 2022, she was "locked down under a PREA investigation." *Id.*

that it was Theresa Baker, Career and Technical Education Supervisor at WERDCC, who had the final say in who was admitted to the Cosmetology Program. [ECF No. 11 at 79].

The letter, dated August 5, 2024, states that as of that date, plaintiff had thirteen (13) CDVs within a six-month time, and neither Baker, nor the vocational supervisor at CCC would "enroll a student in class with 13 violations in the last six months." Baker stated, "There are a limited number of seats in vocational classes, meaning there must be high expectations for our students. Currently you do not meet those expectations, due to your violation status." Baker also points out that because plaintiff was set to be released prior to the time it took to fulfill the class (12 months), she also was not eligible for the class at that time. *See id.*

Plaintiff asserts in the complaint that defendant Crystal Hull "treated [her] differently from others similarly situated" by making her sit on the waiting list for five months but only making another inmate, a person named Kia Collins, wait three weeks for an interview. [ECF No. 1, at 26, 96-98]. However, as noted above, it appears that Hull was not in charge of who was admitted to the Vocational Program. Moreover, plaintiff fails to indicate how she and Kia Collins are similar in all relevant aspects, such as custody level, scheduled release date, adjustment level, vocational score, education score and history of CDVs.[6] Additionally, it appears she and Collins were in a relationship that ended badly. [ECF No. 11 at 49].

Plaintiff also complains that she was denied a property value of "meaningful rehabilitation," and that ordinarily, other inmates were accepted into Vo-Tech within sixty days. [ECF No. 11 at 9].

---

[6]According to a Memorandum issued on November 30, 2021, from Travis Terry, Director of Division of Offender Rehabilitative Services, with the subject line "Temporary Operating Directive – Career and Technical Class eligibility modifications," personnel responsible for placing offenders in Career and Technical Education classes should consider the following: education scores, time of release, whether an offender had major CDV and an offender's vocational scores. The memo also states that classes should allow for priority of placement by time of release. [ECF No. 11 at 76-77].

## C. Plaintiff's Claims Relating to Her Removal from the Washington University Bachelor's Degree Program

Plaintiff claims that in early May of 2023, she was chosen to participate in the Washington University Bachelor's Degree Program. [ECF No. 1 at 11]. She asserts that unnamed Washington University faculty members had the discretion as to whom they admitted into their educational program. [ECF No. 1 at 98]. However, she alleges that defendants Lance McAfee, Crystal Hull and Derrek Hendern, operated through WERDCC, to "deprive the Plaintiff from participating in any meaningful rehabilitative opportunities such as Vocational and Educational Programs in violation of the Equal Protection Clause. . ." [ECF No. 11 at 8]. Plaintiff claims, in a conclusory manner, that defendant Hendern treated her differently than others similarly situated by removing her from the Washington University Bachelor's Degree Program. [ECF No. 11 at 9]. She believes this was a denial of a property interest, and she alleges that generally, inmates were only removed from educational programs when their conduct threatened the safety of other inmates or staff members, or if they tested positive for substances. *See id.* Plaintiff also purports, without any citation to a policy or custom, that if an inmate dropped out of a program, she suffered a CDV with a restriction on any paid work as a sanction. *Id.*

### 1. Conspiracy/Collusion Claim Relative to Plaintiff's Removal from the Washington University Bachelor's Degree Program

Although it is not entirely clear, plaintiff appears to allege that several defendants named in this action, including defendants Donna Brown, Christy York, B. Nelson, Destiny Swank-Pease, Christopher Buie and Tammy Church, acted in a conspiracy with defendants Derrek Hendern and Lance McAfee to deprive her of the "property value" of the Washington University Bachelor's Degree Program by interfering with her due process rights. *Id.* Plaintiff asserts that these defendants did so by giving her numerous CDVs which ultimately resulted in her removal from

10

the Washington University Bachelor's Degree Program in May of 2024. [ECF No. 11 at 16-17]. Plaintiff has included attachments to her original complaint and her amended complaint indicating that between February 2023 and March 2024, she accumulated eleven CDVs. [ECF No. 1 at 78].

Plaintiff believes Donna Brown colluded with Lance McAfee in May of 2023 to uphold a CDV she was given for a sexually explicit phone call, which allegedly included masturbating in front of other inmates. *See* WERDCC No. 23-00573; [ECF No. 1 at 11-12]; *see also* ECF No. 11 at 11-12. She alleges that in August of 2023, Destiny Swank-Pease found her guilty of an unnamed CDV.[7] [ECF No. 1 at 18-19 *referring to* WERDCC No. 23-00856]. After purportedly finding plaintiff guilty of the CDV, Swank-Pease told plaintiff, "What's not fair is wasting our time with your complaints. This is prison. But now I'm going to waste your time..."

On September 22, 2023, during a disciplinary hearing for another of plaintiff's CDVs, [WERDCC No. 23-01108], plaintiff claims that Kimberly Immel, who she named as a defendant in the original complaint, failed to document evidence that she relied on to find plaintiff guilty. [ECF No. 1, pp. 20-21.]. When plaintiff challenged asked, "Who told you to find me guilty?" Immel purportedly replied, "The FUM [Functional Unit Manager]." At that time, the FUM was Lance McAfee.

Plaintiff was given a CDV by Aiden Leon relative to her use of obscene language in the laundry room on November 24, 2023. [ECF No. 11 at 33] *referring to* WERDCC 23-01305. The hearing on the matter was done by Christy York on November 30, 2023. York noted on the Corrective Action Report (CAR) that this was plaintiff's eighth CDV in six months.

It appears that plaintiff received a CDV prior to the one given by Aiden Leon, on November 19, 2023. [ECF No. 1 at 21, 44]; *see also* WERDCC 23-286. Plaintiff complains in the

---

[7]Although plaintiff provides the citation to this CDV in her complaint, she fails to attach the CDV to either her complaint or amended complaint.

IRR relative to the CDV that "CO1 Curry failed to rewrite the violation due to technical errors outlined in policy." Thus, it appears that plaintiff believed that Christy York, who presided over the hearing on the CDV, should have dismissed the CDV against her due to procedural, or technical reasons. Additionally, plaintiff complains that although York allowed plaintiff to present a witness statement from another offender at the hearing, York refused to table the hearing to allow plaintiff to call Officer Cagle as a witness. *See id.* Plaintiff does not indicate what she believes Cagle would have said on her behalf.

On December 18, 2023, Officer Chapman reported that plaintiff had been in a fight with another inmate. [ECF No. 11 at 32; *see also* WERDCC 23-01423]. Plaintiff complains that despite not having started the fight, Correctional Officer Nelson found her guilty of a major violation for fighting utilizing video evidence against her. [ECF No. 1 at 47]; WERDCC 24-75.

As referenced above, plaintiff was given a CDV by Crystal Hull on February 7, 2024, for "Creating a Disturbance" and "Disobeying an Order" when she placed her hands directly in chemical products (relaxer) while she was a "customer" in the cosmetology department at WERDCC. [ECF No. 11 at 28]; *see also* WERDCC 24-00178. The CDV states that Hull told plaintiff not to put her hands in chemicals or products several times, but she continued to disobey Hull's orders. Plaintiff then stated loudly in front of other inmates, "your teacher does not know how to do relaxers" and "this is fucking bullshit."

The hearing on the CDV issued by Hull was held on February 16, 2024, in front of Destiny Swank-Pease. [ECF No. 11 at 29-31]. Plaintiff asserts that she wrote a three-page statement for use in her CDV hearing, but unfortunately, Swank-Pease never received the statement, and she refused to table the hearing long enough for the statement to be found. [ECF No. 11 at 14-15]. When plaintiff became frustrated with Swank-Pease's insistence that plaintiff write her response

12

to the hearing on one line, plaintiff walked out of the hearing, and the hearing was completed without her. *Id; see also* [ECF No. 11 at 29-31]. Although Swank-Pease initially recommended the punishments of ten days of Disciplinary Segregation and no ability to utilize the cosmetology department for ninety days, Deputy Warden Derrek Hendern added the additional punishment of removal from the Washington University Bachelor's Degree Program for one year, from February 16, 2024, to February 16, 2025. [ECF No. 11 at 31]. Plaintiff asserts that defendant Hendern should not have modified the CDV to include removal from the Washington University Bachelor's Degree program. She believes it violated her equal protection and due process rights.

On April 25, 2024, PREA investigator Lucy Voss concluded an investigation into plaintiff's allegation that offender Kia Collins had sexually and physically assaulted her. [ECF No. 1 at 23]; *see also* ECF No. 11 at 49-53. Voss found plaintiff's claims unfounded. On April 29, 2024, defendant Lance McAfee assessed a CDV against plaintiff for making a false written or oral PREA statement after reviewing Voss' investigation. Christopher Buie was the hearing officer over the CDV on May 2, 2024, wherein plaintiff was found guilty and given thirty days of Disciplinary Segregation, sixty days of no outside visits, a referral to the Administrative Segregation Committee and no premium pay job for ninety days.

### D. Plaintiff's Request for Relief in Her Amended Complaint

Plaintiff seeks both compensatory and punitive damages in this action. She also seeks an order from this Court declaring the Missouri Department of Corrections' "mode of operation as unconstitutional by allowing its employees" to "infringe on the plaintiff's rehabilitation efforts." [ECF No. 11 at 21].

## Discussion

Having thoroughly reviewed and liberally construed plaintiff's complaint, the Court concludes it is subject to dismissal as written.

### A. Claims Against the Missouri Department of Corrections and Defendants in their Official Capacities

Plaintiff sues Trevor Foley, Christopher Buie, Lance McAfee, Tammy Church, Crystal Hull and Derrek Hendern in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.,* 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, defendants are alleged to be employees of the Missouri Department of Corrections. As such, the official capacity claims against them are claims against the State of Missouri, their employer. Similarly, the claim plaintiff brings against MDOC, is also a claim against the State of Missouri. *See Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.,* 948 F.2d 1084, 1086 (8th Cir. 1991) (agency exercising state power as an arm of the compacting state is not "person" subject to § 1983 suit). The claim against the State of Missouri fails for three reasons.

First, as plaintiff seeks money damages, the State of Missouri is not a 42 U.S.C. § 1983 "person." "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). Because plaintiff is missing an essential element of a § 1983 action, her claim for money damages against the State of Missouri must be dismissed.

Second, sovereign immunity also protects the State of Missouri from plaintiff's claim for money damages. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). Sovereign immunity also bars a claim for money damages against a state official sued in an official capacity. *Andrus ex rel.*

*Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment").

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id.* The second exception is when a state waives its immunity to suit in federal court. *Id.* at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception does not apply because the State of Missouri has not waived its immunity in this type of case. *See* Mo. Rev. Stat. § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles…within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property"). For this reason, as well, plaintiff's claim for money damages against the State of Missouri must be dismissed.

16

To the extent that plaintiff seeks prospective injunctive relief, she has not demonstrated the State of Missouri's liability. Such liability may attach to a governmental entity if a constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

To sustain a claim under 42 U.S.C. § 1983, however, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." *Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 934 (8th Cir. 2016). *See also Young v. Harrison*, 284 F.3d 863, 866 (8th Cir. 2002) ("Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right"). Specifically, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). *See also Dubose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999) ("In any [42 U.S.C.] § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the constitution or laws of the United States").

Plaintiff has not articulated an unconstitutional policy at WERDCC which culminated in a violation of her rights. *See, e.g., Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). Nor has plaintiff indicated that there was an unofficial custom at WERDCC that consisted

17

of a widespread, persistent pattern of unconstitutional misconduct which was a moving force behind a constitutional violation. *See, e.g., Johnson v. Douglas Cty. Med. Dep't,* 725 F.3d 825, 828 (8th Cir. 2013). Last, she has failed to allege that there was a failure to train or supervise defendants at WERDCC such that they acted deliberately indifferent to her needs. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989)

As set forth below, the alleged "unofficial custom" of which plaintiff complains, her removal from the Washington University Bachelor's Degree Program and delayed entry into the Cosmetology Program, is not facially unconstitutional. Rather, plaintiff's claims are generally based on individualized unconstitutional discrimination, *i.e.,* her claims for equal protection and due process violations. Individualized discrimination cannot make up a custom or policy claim.

Additionally, to the extent plaintiff is asserting that defendants failed to follow certain prison policies or state laws when assessing her CDVs, it is well established that there is no federal constitutional liberty interest in having state officers follow state law or having prison officials follow prison regulations. *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003) (citing *Kennedy v. Blankenship,* 100 F.3d 640, 643 (8th Cir. 1996)). *See also Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability).

Based on the above, plaintiff is unable to present evidence that she was harmed due to an unconstitutional policy, an unofficial custom of unconstitutional misconduct, or a failure to train or supervise defendants who were purportedly acting in an unconstitutional manner. To that end, plaintiff has not demonstrated the liability of the State of Missouri for either monetary damages or injunctive relief.

18

**B. Individual Capacity Claims**

Plaintiff has two overarching claims in this case. She alleges that she was unlawfully removed from the Washington University Bachelor's Degree Program, and she alleges that was unlawfully discriminated by defendants' actions in delaying her entry into the Vocational Cosmetology Program at WERDCC. As an offshoot of those claims, plaintiff additionally alleges that certain defendants engaged in a conspiracy to deprive her of the "property value" of the Washington University Bachelor's Degree Program by interfering with her due process rights. The Court will first address plaintiff's claims under the Equal Protection Clause of the Fourteenth Amendment.

**1. Plaintiff's Equal Protection Clause Claims**

Plaintiff's first claim under the Fourteenth Amendment Equal Protection Clause is that she was denied entrance into the Vo-Tech Program (Cosmetology Program) at WERDCC in an unlawful manner. She asserts that by February 15, 2023, she met all qualifications for the Cosmetology Program, and she had been on the waiting list to enter the Program since September 2021. She claims, in a conclusory manner, that inmates who met the qualifications for Vo-Tech were ordinarily accepted within sixty days from when they applied.

For her second claim, plaintiff asserts an equal protection argument relating to her removal from the Washington University Bachelor's Degree Program. She claims that in early May of 2023, she was chosen to participate in the Washington University Bachelor's Degree Program. [ECF No. 1 at 11]. However, she asserts, in a conclusory manner, that defendant Hendern treated her differently than others similarly situated by removing her from the Washington University Bachelor's Degree Program. [ECF No. 11 at 9].

19

The Equal Protection Clause of the Fourteenth Amendment requires that the government "treat similarly situated people alike," a protection that applies to prisoners. *Murphy v. Missouri Dept. of Corr.*, 372 F.3d 979, 984 (8th Cir. 2004) (quoting *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999)). To show an equal protection violation, plaintiff must show: (1) she is treated differently than a similarly situated class of inmates, (2) the different treatment burdens a fundamental right or is based on a suspect classification, and (3) there is no rational relation between the different treatment and any legitimate penal interest. *Id.* (citing *Weiler v Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008) (citing *Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016 (8th Cir. 2006)).

Plaintiff has not alleged that she is a member of a suspect class. *See Murray v. Dosal*, 150 F.3d 814, 818 (8th Cir. 1998) (stating that prisoners are not a suspect class). And the only "right" that plaintiff alleges has been violated is the "right" to participate in "rehabilitation" programs. But there is no fundamental right parole, early release or rehabilitation programs. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). And it is well established that an inmate does not have a constitutional right to rehabilitation, education, or jobs. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Persechini v. Callaway,* 651 F.3d 802, 807 (8th Cir. 2011) (stating that plaintiff "did not have a protected liberty interest in the discretionary probationary release to which he would have become eligible had he successfully completed" MODOC's long-term substance abuse treatment program); *Wishon v. Gammon*, 978 F.2d 446, 450 (8th Cir. 1992)("[p]risoners have no constitutional right to educational or vocational opportunities during incarceration"); *see also Ballard v. Sims,* No. 5:16CV00260-JLH-JJV, 2016 WL 8677346, *2 (E.D. Ark. Aug. 26, 2016) (finding that a

20

prisoner's expulsion from a substance abuse training program twenty-four hours prior to graduation based on allegations from another inmate, which plaintiff alleged were not investigated by prison staff, failed to rise to a constitutional violation).

In fact, there are several holes in plaintiff's assertions of equal protection discrimination. First, as noted above, plaintiff has failed to address who specifically denied her entrance into the Vo-Tech Program between 2021 and 2023. Although she intimates that it was Crystal Hull, she has included evidence attached to her pleadings that it was, in fact, Theresa Baker, Career and Technical Education Supervisor at WERDCC, who had the final say in who was admitted to the Cosmetology Program. [ECF No. 11 at 79].

As for the Washington University Bachelor's Degree Program, the record is clear that it was Deputy Warden Hendern who made the decision to remove plaintiff from that program for a one-year period. [ECF No. 11 at 31]. And this decision was based on the total number of CDVs she had accumulated. In the March 29, 2024, response to her IRR, plaintiff was told:

> Your Informal Resolution Response has been taken seriously and has been investigated thoroughly by staff. Based on the evidence received, at the time you lost your Washington University privileges, you had acquired 11 conduct violations. You have received a total of 106 conduct violations during your incarceration. The violation for a 19.1 that resulted in a 1 year sanction suspending you from education at Washington University. This sanction was a direct result of multiple violations from 2/23-3.23 spanning over a year. The evidence presented does validate the decision to discontinue your college education at this time.

[ECF No. 1 at 78].

Second, there was a non-discriminatory reason for both her removal from the Washington University Bachelor's Degree Program and the delay in admitting plaintiff to the Cosmetology Program. Plaintiff admits in her statement attached to the grievance appeal, WERDCC 24-68, filed on May 11, 2024, that due to her own behavior and accumulation of CDVs, as well as an ongoing PREA investigation, she had been in and out of Disciplinary/Administrative Segregation between

21

November 2021 and September of 2023. [ECF No. 1 at 96-97]. Thus, she was unable, during that time, to attend the Vo-Tech program. Although the record is not entirely clear as to how many CDVs plaintiff accrued between November of 2021 and September of 2023, plaintiff does not appear to dispute that between February 2023 and March 2024, she accumulated eleven CDVs. [ECF No. 1 at 78].

According to the IRR response provided to plaintiff on March 29, 2024, plaintiff accumulated 106 CDVs during her incarceration at MDOC, which began on or about July 29, 2013. *See State v. Johnston*, No. 13BA-CR00145 (13th Jud. Circuit, Boone County Court).[8] As Baker pointed out in her letter to plaintiff in August of 2024, because there were a limited number of seats in vocational classes, there were "high expectations" for vocational students. [ECF No. 11 at 79]. Plaintiff was told that she could not meet those high expectations due to her violation status. In addition, according to a Memorandum issued on November 30, 2021, from Travis Terry, Director of Division of Offender Rehabilitative Services, personnel responsible for placing offenders *in both vocational and educational classes,* were required to consider the following: education scores, time of release, whether an offender had major CDVs and vocational scores. [ECF No. 11 at 76-77] (emphasis added).

---

[8]Plaintiff was charged with murder in the first degree, armed criminal action and tampering with a motor vehicle in the first degree. The jury originally found plaintiff guilty on all three counts, but plaintiff was subsequently granted a new trial on the charges of murder in the first degree and armed criminal action. On July 29, 2013, plaintiff was sentenced to seven years in the Missouri Department of Corrections on the charge of tampering with a motor vehicle in the first degree. A second jury trial was held between May 3, 2016, and May 6, 2016, on the remaining charges. A jury found plaintiff guilty of the lesser-included offense of voluntary manslaughter and guilty on the offense of armed criminal action, and on June 13, 2016, she was sentenced to fifteen years on the former and twenty years on the latter, to run concurrently to one another but consecutively to the tampering charge, for a total term of imprisonment of twenty-seven years in the Missouri Department of Corrections.

In line with Terry's Memorandum, the reasons given for plaintiff's failure to be placed in the Cosmetology Program and for her removal from the Washington University Bachelor's Degree Program were related to her accumulation of CDVs.

It appears plaintiff is nonetheless attempting to plead a "class of one" equal protection claim in this instance. To do so, a plaintiff must "allege that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Robbins v. Becker*, 794 F.3d 988, 995 (8th Cir. 2015) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). Plaintiff alleges that she was treated differently from inmate Kia Collins relative to her request for entrance into the Cosmetology Program. However, she has not compared herself to anyone regarding her removal from the Washington University Bachelor's Degree Program.

With respect to the Cosmetology Program, plaintiff asserts that she was made to sit on the "waiting list" for Vo-Tech for five months while Collins was able to get an interview for Vo-Tech within three weeks. However, plaintiff fails to provide enough information to allow the Court to compare herself to Collins. For example, she fails to indicate how she and Collins were similar in all relevant aspects, such as custody level, scheduled release date, adjustment level, vocational score, education score and history of CDVs. *See Klinger v. Dep't of Corr*, 31 F.3d 727, 731 (8th Cir. 1994) (A plaintiff must first demonstrate that she was treated "differently than others who were similarly situated to her."); *see also In re Kemp*, 894 F.3d 900, 910 (8th Cir. 2018) ("[d]issimilar treatment of dissimilarly situated persons does not violate equal protection" (alteration in original) (quoting *Klinger*, 31 F.3d at 731)).

Plaintiff also fails to compare herself to another individual (for both programs) who had as many CDVs as she did but was allowed to join/stay in both programs at WERDCC. Her failure

23

to do so is fatal to her claims for discrimination as to both the Washington University Bachelor's Degree Program and the Cosmetology Program.

Last, the Court notes that an equal protection violation also requires "an intent to discriminate." *In re Kemp*, 894 F.3d at 910. Plaintiff has failed to allege that Baker, who it appears was making the decision regarding plaintiff's entrance into the Cosmetology Program, had an *intent* to discriminate against her.

Additionally, although plaintiff appears to believe that Hendern had discriminatory intent towards her, she has not provided factual allegations relative to such an intent. In other words, plaintiff has failed to assert that Hendern took actions (or told others to take actions) to remove her from the Washington University Bachelor's Degree Program. Although a pro se pleading is liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), such pleadings cannot be conclusory, and must set forth facts that, taken as true, state a claim as a matter of law. *Johnson v. Stark*, 717 F.2d 1550, 1552 (8th Cir. 1983). A court will not supply additional facts or create a legal theory assuming facts that have not been pleaded. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

The Eighth Circuit applied a class of one analysis in the prison setting in the case of *Nolan v. Thompson.* 521 F.3d 983, 989 (8th Cir. 2008). In that case, an inmate alleged discrimination because the parole board denied him parole but granted parole to purported similarly situated inmates. *Id.* The Eighth Circuit held that "[a] class-of-one plaintiff must therefore 'provide a specific and detailed account of the nature of the preferred treatment of the favored class,' especially when the state actors exercise broad discretion to balance a number of legitimate considerations." *Id.* at 990 (quoting *Jennings v City of Stillwater*, 383 F.3d 1199, 1214-15 (10th Cir. 2004)).

24

Here, plaintiff proffers only conclusory conclusions of disparate treatment that other similarly situated prisoners have fared better in entering the Cosmetology Program, but she has failed to allege that the person or persons making the decision to allow entrance into the program, namely Baker, lacked a rational basis for her decisions. And as noted, plaintiff has failed to compare herself to anyone else who had as many disciplinary actions against them but was able to stay in the Washington University Bachelor's Degree Program. As noted in the Memorandum issued by Travis Terry, there were a multitude of factors relevant to the decision-making process relating to career and technical education at WERDCC, not the least of which was the disciplinary status of prisoners, and the accumulation of CDVs. Plaintiff was told that her disciplinary status, or accumulation of CDVs was the specific issue limiting her involvement in both programs. Given this, plaintiff's Fourteenth Amendment equal protection claims are subject to dismissal.

### 1. Due Process Claims

Plaintiff asserts that unnamed Washington University faculty members had the discretion as to whom they *admitted* into their educational program. [ECF No. 1 at 98] (emphasis added). She claims that in early May of 2023, she was chosen to participate in the Washington University Bachelor's Degree Program. [ECF No. 1 at 11]. However, she alleges that defendants Lance McAfee, Crystal Hull and Derrek Hendern, operated through WERDCC, to deprive her from participating in "meaningful rehabilitative opportunities" such as vocational and educational programs.

"[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Life or property is not at issue in this case. As such, plaintiff must – as a first step – demonstrate that a

25

liberty interest is at stake. *Persechini*, 651 F.3d at 806 (citing *Sandin v. Conner,* 515 U.S. 472, 472 (1995)). A liberty interest can arise out of the Due Process Clause itself or be state-created. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

Plaintiff has no constitutional right to participation in the Washington University Bachelor's Degree Program as "[t]he Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin*, 515 U.S. at 480 (quotation omitted). The denial or termination of discretionary prison programs also does not result in an atypical or significant hardship in relation to the remainder of the prison population. *Persechini*, 651 F.3d at 807. Therefore, plaintiff simply has no constitutional right to participation in the Washington University Bachelor's Degree Program and her claims are subject to dismissal.

To the extent plaintiff is also asserting that the denial of "education" or entrance into a rehabilitation program, such as the Vo-Tech program, was also a violation of her due process rights, these claims are also subject to dismissal. As noted above, a prisoner has no liberty interest in participating in an educational or rehabilitation program, and the denial or termination of such does not result in an atypical and significant hardship. *See Persechini,* 651 F.3d 807 (affirming dismissal of claim by prisoner who had been terminated from long-term substance-abuse treatment, because he had no plausible liberty interest in such treatment); *Giannini v. Federal Bureau of Prisons*, 405 Fed. Appx. 96, 97 (8th Cir. 2010) (stating that federal prisoner did not have a liberty interest in receiving sentence reduction after completing residential drug abuse program); *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir. 1996) (stating that prisoner had no liberty interest in remaining in a work release program); *Koch v. Moore*, 51 F.3d 277 (8th Cir. 1995) (unpublished opinion) (stating that prisoner had no liberty interest in participating in a treatment program or in receiving parole); and *Jones v. Moore*, 996 F.2d 943,

26

945 (8th Cir. 1993) (stating that prisoner had no liberty interest in participating in the Missouri Sex Offender Program).

Plaintiff may believe that she is either receiving a prolonged sentence from not being able to participate in programming or somehow being denied something that other prisoners are being given, but in reality, she is only subject to her preexisting judicial sentence. *See Persechini*, 651 F.3d at 80 (stating that program termination "meant only that [the inmate] will serve the remainder of his original sentence under typical circumstances"); and *Brakeall v. Kaemingk*, 2016 WL 4014600, at *13 (D. S.D. 2016) (explaining that prisoner's termination "from treatment did not result in either an atypical or a significant hardship in relation to the remainder of the prison population but only changed the condition of his confinement" from a less restrictive to a more restrictive incarceration). As such, there is no liberty or property interest at stake in denial of plaintiff from these programs.

Last, plaintiff asserts in a conclusory manner that several defendants in this action violated certain MDOC regulations in carrying out review of her CDVs and in thereafter assigning her to undisclosed time periods in Disciplinary/Administrative Segregation. The conclusion she draws from this, therefore, is that, had she not been assessed the CDVs, (allegedly unlawfully) she would not have been delayed in her entrance into the Vo-Tech Program or been removed from the Washington University Bachelor's Degree Program.

Plaintiff is vague as to her conditions while she was purportedly in Disciplinary/Administrative Segregation. Plaintiff fails to provide the amount of time she spent in segregation. She also fails to indicate how many days at one time she was unable to participate in activities, mealtimes or religious services at WERDCC. Last, plaintiff has failed to state her religion.

27

Placement in Disciplinary Segregation does not, in and of itself, amount to an atypical and significant hardship. *See Portley-El v. Brill,* 288 F.3d 1063, 1065 (8th Cir. 2002) (recognizing that the Eighth Circuit has consistently held that Disciplinary Segregation is not an atypical and significant hardship under *Sandin).* To state a claim under § 1983 for unconstitutional placement in Administrative or Disciplinary Segregation, a prisoner "must show some difference between her new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *Phillips,* 320 F.3d at 847. Because plaintiff has failed to indicate how many consecutive days she was in segregation or compared how her life was in segregation versus general population, she has not shown that she was subjected to a due process violation relating to her placement in Disciplinary/Administrative Segregation. *See id.* (stating that denial of exercise privileges for thirty-seven days was not an atypical and significant hardship in the context of normal prison life); *Freitas v. Ault*, 109 F.3d 1335, 1337 (8th Cir. 1997) (stating that prisoner's "on call" status, in which he was placed in lock-up, had fewer visitors, and was not allowed phone calls, did not violate his due process rights).

Further, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands," but its fundamental requirement is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 333-34 (1976) (internal quotations and alteration omitted). The Supreme Court has held that, in prison discipline cases, the requirements of due process are satisfied if "some evidence" supports the prison disciplinary decision. *Superintendent v. Hill,* 472 U.S. 445, 455 (1985). This standard does not require this Court to examine the entire record, independently assess witness credibility, or weigh evidence. *Id.* (citations omitted). "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.*

28

at 445-56 (citing *United States ex rel. Tisi v. Tod*, 264 U.S. 131, 133-34 (1924); *Willis v. Ciccone*, 506 F.2d 1011, 1018 (8th Cir. 1974)). And in this case, plaintiff has supplied that "some evidence" as attachments to her complaint and amended complaint, *i.e.,* the Corrective Action Reports, CDVs, IRRs, IRR Responses, Grievances, Grievance Responses, Grievance Appeals, Grievance Appeal Responses, and Warden Responses. *See Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir. 1994) (A corrections officer's description of events has been found to constitute some evidence upon which a prison disciplinary committee could determine that an inmate violated a prison rule). Although it is apparent plaintiff disagrees with many, if not all, of the disciplinary actions taken against her, it appears that she received all the process due to her relative to each disciplinary incident. Because the prison's disciplinary decisions appear to be factually supported by "some evidence," this Court cannot conclude that there was a due process violation relative to the CDVs assessed with resulted in the delay in plaintiff attending the Vo-Tech Cosmetology Program and in her removal from the Washington University Bachelor's Degree Program. *See Hill,* 472 U.S. at 455-56.

Last, to the extent plaintiff is asserting that defendants failed to follow certain prison policies or state laws when assessing her CDVs, this also does not rise to the level of a due process violation. It is well established that there is no federal constitutional liberty interest in having state officers follow state law or having prison officials follow prison regulations. *Phillips*, 320 F.3d at 847 (citing *Kennedy*, 100 F.3d at 643); s*ee also Gardner*, 109 F.3d at 430 (failure to follow prison policy is not basis for § 1983 liability).

## 2.  Conspiracy Claims

29

Last, plaintiff asserts in a conclusory manner that several defendants, including defendants Donna Brown, Christy York, Unknown Nelson, Destiny Swank-Pease, Christopher Buie and Tammy Church, acted in a conspiracy with defendants Derrek Hendern and Lance McAfee, to deprive her of the "property value" of the Washington University Bachelor's Degree Program by interfering with her due process rights. She alleges that these defendants did so by giving her numerous CDVs which ultimately resulted in her removal from the Washington University Bachelor's Degree Program in May of 2024. [ECF No. 11 at 16-17].   Plaintiff has included attachments to her original complaint and her amended complaint indicating that between February 2023 and March 2024, she accumulated eleven CDVs.

"To prove a § 1983 conspiracy claim against a particular defendant, the plaintiff must show: [(1)] that the defendant conspired with others to deprive him or her of a constitutional right; [(2)] that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; [(3)] and that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). *See also Burbridge v. City of St. Louis, Missouri*, 2 F.4th 774, 782-83 (8th Cir. 2021). Additionally, to prevail, the plaintiff is required to prove the deprivation of a constitutional right or privilege. *Riddle v. Riepe*, 866 F.3d 943, 948 (8th Cir. 2017). *See also Draper v. City of Festus, Mo.*, 782 F.3d 948, 953 (8th Cir. 2015). "Absent a constitutional violation, there is no actionable conspiracy claim." *In re Kemp*, 894 F.3d 900, 910 (8th Cir. 2018). Regarding the first element, a "plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Holmes v. Slay*, 895 F.3d 993, 1001 (8th Cir. 2018). In other words, there must be some showing of "a meeting of the minds or understanding among the conspirators to achieve the conspiracy's aims." *See White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008). This burden can be satisfied by a plaintiff "pointing to at least some facts which would

suggest the defendants reached an understanding to violate his rights." *Boneberger v. St. Louis Metropolitan Police Dept.*, 810 F.3d 1103, 1109 (8th Cir. 2016).

Plaintiff's § 1983 conspiracy claim rests on her assertion that defendants acted together to deprive her of her property rights in the Washington University Bachelor's Degree Program. However, the Court has already found that she had no liberty or property right in the Washington University Bachelor's Degree Program. Thus, she is unable to show a conspiracy claim in this instance.

Additionally, plaintiff has not properly alleged a "meeting of the minds," or an agreement between the parties to unlawfully deprive her of her inclusion in the Washington University Bachelor's Degree Program, or the Cosmetology Program. As noted above, the only allegation plaintiff has made as far as a "meeting of the minds," is that Kimberly Immel, who was presiding over a hearing on September 22, 2023, for a CDV given to plaintiff by an unnamed individual, purportedly told plaintiff that her FUM, who was Lance McAfee, told her to find plaintiff guilty. [ECF No. 1, pp. 20-21.]. The problem with plaintiff's assertion is that Lance McAfee was not the decision-maker relative to her removal from the Washington University Bachelor's Degree Program. It was Deputy Warden Derrek Hendern who made the decision. Thus, plaintiff has offered no allegations of an alleged conspiracy to deprive her of her inclusion in the Washington University Bachelor's Degree Program, or for that matter, the Cosmetology Program. As such, plaintiff's purported conspiracy claims are subject to dismissal.

### Conclusion

Having thoroughly reviewed and liberally construed the amended complaint, the Court concludes that it is subject to dismissal because it is frivolous and/or fails to state a claim upon which relief may be granted. The Court can envision no amendment to the amended complaint that

31

would cause it to state a plausible claim for relief. The Court will therefore dismiss this action at this time, without prejudice, and will decline to exercise supplemental jurisdiction over any state law claims. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S 715, 726 (1966) (if federal claims are dismissed before trial, remaining state claims should also be dismissed); *Crest Construction II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (where all federal claims have been dismissed, district court's decision to decline supplemental jurisdiction over state claims is "purely discretionary").

Accordingly,

**IT IS HEREBY ORDERED** that that this case is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that any state law claims brought by plaintiff in this action are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1367(c).

**IT IS FURTHER ORDERED** that an appeal of this action would not be taken in good faith.

A separate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 30th day of September, 2025.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE